```
              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

HEINZ SIEMER,                    :      NO. 1:05-CV-00317
                                 :
     Plaintiff,                  :
                                 :
  v.                             :      **OPINION AND ORDER**
                                 :
                                 :
COMET NORTH AMERICA,             :
                                 :
     Defendant.                  :

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. 17), Defendant's Response in Opposition (doc. 34); Defendant's Motion for Summary Judgment (doc. 19), Defendant's Motion for Summary Judgment on Plaintiff's Claims under Ohio Revised Code §§ 4112.02(A) and (N) (doc. 33), Plaintiff's Consolidated Memorandum in Opposition to Defendant's Motions for Summary Judgment (doc. 36), and Defendant's Reply (doc. 38). For the reasons indicated herein, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendant's Motions for Summary Judgment.

**I. Background**

Defendant Comet North America ("Comet"), the subsidiary of a Swiss Company, Comet AG, sells various diagnostic equipment, including mass spectrometers, vacuum capacitors, and x-ray industrial tubes (doc. 1). Plaintiff began working in May 2000

at Comet's Cincinnati, Ohio branch, as Comet's Vice President and General Manager of North American Operations (Id.). It is undisputed that Plaintiff's performance for Comet resulted in profits and that he received pay increases and bonuses, although Defendant emphasizes he supervised sales personnel rather than engaging in significant selling himself (Id.).

In April of 2004, Comet acquired Feinfocus, a German manufacturer of specialty x-ray systems, along with its branch offices in the United States (Id.). Shortly thereafter, Peter Ruth, the CEO of Comet AG, explained to Plaintiff that due to the acquisition, there would be an unnecessary duplication of sales personnel in the United States (Id.). During the same discussion, Plaintiff avers that Ruth told him because Plaintiff was fifty-five years old, and because Ruth did not know how much longer Plaintiff would work, he decided to appoint Lance Scott, the former CEO of Feinfocus prior to the acquisition, as President of Comet North America (doc. 36). Ruth told Plaintiff the decision had nothing to do with Plaintiff's performance (Id.). According to Plaintiff, he replied to Ruth that he was actually fifty-nine years old and that it would be very difficult to find another job at his age (Id.). Plaintiff also indicates he told Ruth he had no plans to retire until he was sixty-five or seventy (Id.). Defendant argues it offered to explore with

2

Plaintiff other positions he could work at in the company, but Plaintiff understood he had been fired and insists Ruth never made him an alternative proposal (Id.).

Plaintiff subsequently brought the present lawsuit, alleging that Defendant unlawfully discriminated against him on account of his age in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 et seq. (doc. 1). On September 8, 2006, Plaintiff amended his Complaint to add an age discrimination complaint pursuant to Ohio Revised Code §§ 4112.02(A) and (N) (doc. 29). Defendant answered on September 22, 2006, denying Plaintiff's claims and raising a counterclaim for breach of fiduciary and common law duties (doc. 32).

**II. Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131,

1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after

4

completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary

6

judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. ANALYSIS**

    **A. Plaintiff's Motion for Partial Summary Judgment**

Defendant's counterclaim is grounded in the theory that Plaintiff knew he would bring a claim for age discrimination during the pendency of his employment, that he knew Comet had an insurance policy requiring notice of such claims, but that he failed to notify the insurer about his age discrimination claims (doc. 32). Defendant argues that Plaintiff's failure to notice his own age discrimination claim was a violation of his fiduciary duties and common law (Id.).

Plaintiff moved for partial summary judgment on Defendant's counterclaim arguing that by the express terms of the insurance policy in question, no claim existed until he filed in state court, and at the time he filed, he was no longer an employee of Comet (doc. 17). Defendant responds that Plaintiff knew about the insurance policy and should have reported the claim (doc. 34).

Having reviewed this matter, the Court finds Plaintiff's position well-taken that the express language of the insurance policy defines "claim" as a "proceeding commenced by the service of a complaint or charge" (doc. 17). There is no

7

dispute that Plaintiff's employment with Comet ended on September 30, 2004. Plaintiff filed his claim on October 21, 2004 in the Clermont County Court of Common Pleas, and faxed a copy of the Complaint to Defendant's counsel the following day. Clearly Plaintiff did not commence the proceeding or serve his complaint until well after his employment had ended. The Court sees no actionable common law claim, nor a fiduciary duty here that extended beyond the term of his employment. Accordingly, the Court finds Plaintiff's motion for partial summary judgment well-taken, and dismisses Defendant's counterclaims for breach of fiduciary duties and violation of common law.

**B. Defendant's Motions for Summary Judgment**

Defendant moved for summary judgment on Plaintiff's federal and state claims (docs. 19, 33). Defendant argues it made a tough decision, for business and economic reasons, to terminate Plaintiff's employment, and that age never played a role in its decision (doc. 19). Defendant proffers evidence that the candidate it chose, Lance Scott, was highly qualified and possessed specialized knowledge relevant to Comet's acquired company, Feinfocus (Id.). Ruth testified in his deposition that Scott was market-oriented, a strong communicator, and a visionary, while Plaintiff was more internally focused and cost oriented (Id.). Ruth said his decision was made based on the

8

skills of Lance Scott, not on the basis of age (Id.). Comet disputes the allegation that Ruth told Plaintiff because Plaintiff was fifty-five, and because Ruth did not know how much longer Plaintiff would work, Ruth decided to appoint Scott (Id.). Even if Ruth made such a comment, argues Defendant, under the rationale of Williams v. Tyco Electric Corp., 2006 U.S. App. LEXIS (6th Cir. 2006), factual comments about age and retirement do not amount to direct evidence of discrimination (Id.).

Defendant's motion attacks the viability of Plaintiff's age discrimination claims. The issue for the Court is whether Plaintiff has proffered adequate evidence in support of his claims to survive summary judgment.

In order to establish a claim of age discrimination, Plaintiff may either introduce direct evidence of discrimination or prove circumstantial evidence that would support an inference of discrimination. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997), Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir. 1994); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802,(1973); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66 (6th Cir. 1982). The same evidentiary framework applies to discrimination claims brought under the ADEA, and discrimination claims brought under Ohio state law. Allen v. Ethicon, Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).

9

Ohio law, however, offers a slightly different definition of "direct evidence," declining to adopt the definition in federal court jurisprudence encompassing explicit discriminatory statements. Bush v. Dictaphone Corp., 161 F.3d at 369-70 (6th Cir. 1998)(citing Mauzy v. Kelly Servs. Inc., 75 Ohio St. 3d 578, 664 N.E.2d 1272, 1279 (Ohio 1996). The Ohio Supreme Court has held that "direct evidence," refers to a method of proof, not a type of evidence. Mauzy, 75 Ohio St. 3d. at 587. It means that a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent. Id.

Plaintiff argues that he has adequately raised a genuine issue of material fact regarding age discrimination under both direct and indirect evidence theories (Id.).

**I. Direct Evidence Theory**

Direct evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 152 (2000), Ross v. Campbell Soup Co., 237 F.3d 701, 707-08 (6th Cir. 2001). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination

10

was at least a motivating factor in the employer's actions." Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000)(citations omitted), Lautner v. American Tel. and Tel. Co., 1997 U.S. App. LEXIS 1267, No. 95-3756,(6th Cir. Jan. 22, 1997)(Direct evidence is "is evidence which if believed, would prove the existence of a fact . . . without any inferences or presumptions.")  For example, racial slurs or comments constitute direct evidence that a termination may have been racially motivated.  See Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1249 (6th Cir. 1995). Direct evidence can exist in cases where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives.  Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), superceded by statute on other grounds as stated in Norbuta v. Loctite Corp., 1 Fed. Appx. 305, 2001 U.S. App. LEXIS 459 (6th Cir. January 8, 2001).  If a plaintiff produces credible direct evidence of discrimination, discriminatory animus may be at least part of an employer's motive, and in the absence of an alternative, non-discriminatory explanation for that evidence, there exists a genuine issue of material fact suitable for submission to the jury without further analysis by the court. Blalock v. Metals Trades, Inc., 775 F.2d 703, 707-712 (6th Cir. 1985).

      In the case at hand, Plaintiff's direct evidence theory

11

is premised upon the disputed allegation that Ruth told him to his face that he was fifty-five, Ruth was not sure how much longer Plaintiff would be working, so Ruth opted for the younger candidate. As the Court must view Plaintiff's evidence in a light most favorable to him, the non-moving party, it appears at first blush that Plaintiff has proffered direct evidence showing that unlawful age discrimination may have been a motivating factor in his termination. However, Defendant contends that Williams v. Tyco Electric Corp., 161 Fed. Appx. 526 at 534 (6th Cir. 2006), applies here. The Williams court found that statements about the fact that employees were approaching retirement were not necessarily evidence of inaccurate and stigmatizing stereotypes, which are the target of the ADEA. Williams, 161 Fed. Appx. 526, 534. The Court explained that statements merely acknowledging the truth that employees were nearing the age of sixty can be made in the context of a legitimate management concern. Id., citing Rowan v. Lockheed Martin Energy Sys., 360 F.3d 544, 549 (6th Cir. 2004)(finding that a statement referencing the average age of workers was made in the context of a legitimate concern about approaching retirements and consequently did not constitute direct evidence of discrimination).

Plaintiff argues that Williams is not on point with the

12

facts of this case, because here an employee was told to his face, individually, that he was not being chosen because of his age, whereas in Williams the evidence in question involved a general memorandum about some employees, and no employees were involuntarily terminated. The Court concludes, however, that though the facts of this case may differ from those in Williams, the principle of Williams still applies. The Court is not convinced that if it takes the alleged statements made by Ruth as true, that such statements require the conclusion that unlawful discrimination was a motivating factor. Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000). The statements on their face do not stigmatize or stereotype, and they require an inference to be made. Such statements, therefore, do not constitute direct evidence of discrimination under Williams. The Court's conclusion, however, does not preclude Plaintiff from allowing a jury to assess the credibility of Ruth and to ascertain the intent behind his statements, because, as explained below, the Court finds Plaintiff has established his prima facie case by circumstantial evidence.

**II. Plaintiff's Indirect Evidence Theory**

When a plaintiff cannot demonstrate discrimination through direct evidence, the McDonnell Douglas paradigm of circumstantial evidence applies. McDonnell Douglas v. Green,

13

411 U.S. 792 (1973). In order to prevail on a circumstantial evidence theory, a plaintiff must establish a prima facie case of age discrimination by proving that (1) he was over forty, (2) he was qualified, (3) he suffered an adverse employment action, and (4) he was replaced by a younger person or that his termination allowed the retention of a younger employee. McDonnell Douglas, 411 U.S. 792. In the context of a reduction in force, the fourth prong is eliminated, and instead a plaintiff must come forward with additional direct, circumstantial or statistical evidence shows that the employer singled him out for discharge for impermissible reasons. Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999), Barnes v. GenCorp., 896 F.2d 1247 (6th Cir. 1990).

In this case, Defendant argues that Plaintiff did not show a genuine issue of material fact as to whether he was qualified for the position of President and Chief Executive Officer of Comet (doc. 38). Defendant further argues that Plaintiff failed to proffer additional circumstantial, direct, or statistical evidence as part of his prima facie case (doc. 38).

### a. Plaintiff's Qualification For His Position

The focus at this stage of the analysis should be on Plaintiff's objective qualifications, such as his experience in the particular type of work and demonstrated possession of the

14

required general skills. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 2003 U.S. App. LEXIS 1223, *27 (6th Cir. January 27, 2003). As the prima facie case is not intended to be burdensome, searching analysis at this stage on whether a plaintiff is "qualified" is improper. McCrory v. Kraft Food Ingredients, No. 94-6505, 1996 U.S. App. LEXIS 26305 *14(6th Cir. October 3, 1996).

Plaintiff proffers evidence here that he performed well for three years as Comet's top manager. Defendant offers no persuasive evidence to the contrary. While Defendant argues the new position in the consolidated company would be different, Ruth's testimony can fairly be read to show that the competition between Plaintiff and Lance Scott was close, but that the two had different personalities. The testimony does not suggest that Plaintiff was unqualified for the position. The prima facie case is not intended to be burdensome. McCrory, 1996 U.S. App. LEXIS 26305 *14. The Court is satisfied that Plaintiff meets the requirement of showing he possessed the required general skills to remain as Comet's top manager in the newly merged company. Accordingly, summary judgment for Defendant on the theory that Plaintiff was unqualified is inappropriate.

### b. The Heightened Prima Facie Case in Reduction in Workforce Context

Defendant argues that Plaintiff has the additional burden in this case to proffer direct, circumstantial, or statistical evidence showing that he was singled out for discharge for impermissible reasons, because this case involves a reduction in force. (doc. 19, citing Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999), and Barnes v. GenCorp., 896 F.2d 1247 (6th Cir. 1990)). The Sixth Circuit defines a reduction in workforce "as a situation where business considerations cause an employer to eliminate one or more positions within the company." Oil, Chemical, and Atomic Workers Internat'l Union v. RMI Titanium Co., 199 F.3d 881, 885 (6th Cir. 2000).

As a preliminary matter, the Court is not convinced the factual situation in this case falls within the scope of a classic workforce reduction. Here, a company acquired another company and as a result reorganized its operations and staffing. The position of the leader was not necessarily eliminated, but rather the scope of the leader's responsibility expanded. Moreover, Defendant indicates it offered new positions in the merged company to employees, including Plaintiff. Taking all factual inferences in favor of Plaintiff, the Court concludes

16

that as a matter of law, this case does not involve workforce reduction, and therefore Plaintiff is not required to meet a heightened pleading duty to establish his prima facie case. Plaintiff clearly meets the classic McDonnell Douglas prima facie case, as he clearly falls within the protected class, suffered an adverse employment action, was qualified, and was replaced by a younger person.

However, out of an abundance of caution, even should the Court's conclusion be erroneous that this case does not involve a workforce reduction, the Court further finds that Plaintiff meets the heightened pleading requirements under Barnes v. GenCorp., 896 F.2d 1247 (6th Cir. 1990). In addition to meeting the basic requirements of McDonnell Douglas, Plaintiff proffers the alleged statements of Ruth about Plaintiff's age and potential retirement. Although such statements do not qualify as direct evidence of discriminatory motive, as explained above, such comments could be viewed as additional circumstantial evidence of such motivation. A jury, sizing up the credibility of Ruth, might or might not infer that such statements are evidence of age discrimination. Accordingly, the Court finds that even if this case involves a heightened pleading duty, Plaintiff meets it.

**III. The Pretext Analysis**

After Plaintiff presents a <u>prima facie</u> case, as Plaintiff has done here by circumstantial evidence, Defendant must present a legitimate non-discriminatory reason for termination. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993). In response, Plaintiff must show that Defendant's articulated reason for the termination is a pretext for age discrimination. <u>Id</u>. at 507. Plaintiff can prove pretext by showing that "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate his discharge, or (3) they were insufficient to motivate discharge." <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994). The Court must not invoke the business judgment rule to exclude consideration of evidence relevant to the question of pretext. <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 2003 U.S. App. LEXIS 1223, *32.

Here, Defendant's proffered legitimate nondiscriminatory reason for its decision is that Lance Scott was better qualified to run the organization than Plaintiff. The Court finds that Plaintiff has raised a genuine issue of material fact as to whether this reason had basis in fact. Plaintiff proffers evidence that Scott had not shown profit for several years while president of Feinfocus, that Feinfocus sales were

18

about a third the size of those of Comet, and that Defendant admitted Feinfocus suffered from "weak management" (doc. 36). A reasonable jury could conclude that Scott was not better qualified than Plaintiff, who had successfully managed Comet with profit, and that Defendant would not have made the same decision absent age discrimination.

**IV. Conclusion**

Having reviewed this matter, the Court concludes that Plaintiff has adequately met the burden to establish a <u>prima facie</u> case of age discrimination, in violation of the ADEA and Ohio law. Plaintiff has further raised a genuine issue of material fact as to whether Defendant's proffered legitimate nondiscriminatory reasons for its actions are grounded in fact. For these reasons, Plaintiff's claims survive summary judgment. However, the Court does not find merit in Defendant's counterclaims for breach of fiduciary and common law duties. Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment (doc. 17), and DENIES Defendant's Motion for Summary Judgment (doc. 19), and further DENIES Defendant's Motion for Summary Judgment on Plaintiff's Claims under Ohio Revised Code §§ 4112.02(A) and (N) (doc. 33).

SO ORDERED.

Dated: November 30, 2006         s/S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge